## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| TIARA PAYNE and KRISTIN JOURNIGAN, individually and on behalf of all other similarly situated individuals, | : : : | |
| Plaintiffs, | : | CIVIL ACTION FILE |
| v. | : : | NO. 1:14-CV-913-SCJ |
| WBY, INC., d/b/a THE FOLLIES, | : : | |
| Defendant. | : | |

## ORDER

This matter is before the Court on Defendant's motion to compel arbitration [10]; Defendant's second motion to compel arbitration [19]; and Defendant's motion to strike Plaintiffs' supplemental declarations [36].

## I. Background

### A. Procedural History and Facts

Plaintiff, Tiara Payne, filed suit against Defendant WBY, Inc. d/b/a The Follies, on March 28, 2014, alleging that Defendant failed to pay her properly under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. Plaintiff is an exotic dancer at the Follies, an adult entertainment club. During the briefing of arbitration matters discussed more fully below, the parties consented to conditional certification of a collective action. See Doc. Nos. [41] and [42]. The parties then

attempted to mediate the case. See Doc. No. [43].  Meditation, however, failed and in May 2015, the parties asked the Court to re-open the case and rule on the pending motions. See Doc. No. [80].  The Court now turns to those motions.

Shortly after Plaintiff filed suit, Defendant filed its first motion to compel arbitration on the basis that Plaintiff Payne had signed an agreement to arbitrate all of her employment claims, include those that arose under the FLSA.  Defendant also then moved to strike the class allegations based on Plaintiff Payne's agreement to arbitrate.  Plaintiff responded by filing an amended complaint with both Tiara Payne and Kristin Journigan named as Plaintiffs, and keeping all other substantive allegations the same.

Plaintiff Payne noted her agreement to arbitrate her claims based on her consent to arbitration.  Plaintiffs stated, however, that the claims of Plaintiff Journigan and the putative collective action should proceed in court because Journigan had not consented to arbitration.  Defendant filed a second motion to compel arbitration contending that even though Plaintiff Journigan had not signed a written consent to arbitration, her claims, too, should be arbitrated because Defendant posted a mandatory arbitration policy in the employee dressing room at The Follies.

2

Defendant proffers that its Arbitration Policy provides that any "covered claim" of an employee "shall be submitted exclusively to and determined exclusively by binding arbitration under the Federal Arbitration Act." See Arbitration Policy, ¶ 1, Decl. (Steven Shine), Exh. 1. A "covered claim" includes one brought under the FLSA. Id., ¶ 2. The Arbitration Policy bars collective or class action arbitrations. Id., ¶ 3.

Paragraph 17 of the Arbitration Policy states:

AS TO ENTERTAINERS OR OTHER INDEPENDENT CONTRACTORS OF FOLLIES: THE SUBMISSION OF AN APPLICATION, AUDITION AS AN ENTERTAINER, ACCEPTANCE AS AN ENTERTAINER OR YOUR CONTINUED PERFORMANCE AS AN ENTERTAINER SHALL BE DEEMED TO BE ACCEPTANCE OF THIS ARBITRATION POLICY. NO SIGNATURE SHALL BE REQUIRED FOR THE POLICY TO BE APPLICABLE. THE MUTUAL OBLIGATIONS SET FORTH IN THIS AGREEMENT SHALL CONSTITUTE A CONTRACT BETWEEN YOU AND FOLLIES BUT SHALL NOT CHANGE YOUR CONTRACTUAL RELATIONSHIP WHICH IS TERMINABLE AT WILL BY EITHER PARTY, WITH OR WITHOUT NOTICE TO THE OTHER PARTY, OR ANY TERM OF ANY OTHER CONTRACT OR AGREEMENT BETWEEN FOLLIES AND YOU. THIS POLICY SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN YOU AND FOLLIES FOR THE RESOLUTION OF COVERED CLAIMS.

Id., ¶ 17, p. 3. Defendant states that it implemented this Arbitration Policy in June 2012. See Shine Decl., ¶ 3. It further avers that the Arbitration Policy has been posted in the employee's dressing room since June 2012. See Shine (Second) Decl., ¶ 4. Mr. Shine testifies that all entertainers who work at the Follies use the dressing

3

room and that the Arbitration Policy is visible to those who use the dressing room. Id., ¶ 4. Mr. Shine included a photo of the bulletin board. See Shine (Third) Decl., ¶ 5.

Plaintiff Journigan testified that Defendant did not hang posters or signs in the dressing room when she first started at the club. See Journigan Decl., ¶ 4. After a police raid, Defendant did post rules for the entertainers relating to what they were permitted to do on stage. But these rules did not have anything to do with arbitration. Id., ¶ 5. Opt-in Plaintiffs Lance and Miller testified similarly. See Lance Decl., Miller Decl. None of these Plaintiffs was aware of an arbitration policy. See Journigan Decl., ¶ 6; Lance Decl., ¶ 6; and Miller Decl., ¶ 6.[1]

## B.    Contentions

Defendant argues that under its Arbitration Policy, each employee must arbitrate her claims on an individual basis, there can be no class or collective action, and the employees' claims should be dismissed pending arbitration. Defendant contends that it posted the Arbitration Policy on the bulletin board in the employee dressing room and therefore employees had notice of the Policy. Under the terms

---

[1]Defendant asks the Court to strike the supplemental declarations of Plaintiffs. See Doc. No. [36]. Given the piecemeal manner in which the arbitration issue was briefed and the fact that Defendant's own witness offered three separate declarations, the Court is not inclined to strike Plaintiffs' supplemental declarations. The Court DENIES Defendant's motion to strike Plaintiffs' supplemental declarations [36].

4

of the Policy, Defendant avers, the employees' continued employment constitutes acceptance of the Policy.

Plaintiffs respond that they did not see any Arbitration Policy posted on the bulletin board in the employee's dressing room. But even if such a notice had been posted, Plaintiffs argue it was not sufficient to constitute an "offer" to them. Because they had no notice of the "offer" of the Arbitration Policy, their continued employment could not constitute acceptance of the Policy.

## II.   Discussion

Because there is no dispute that Plaintiff Payne agreed to arbitrate her claims, the court DISMISSES all proceedings with respect to Plaintiff Payne.[2] Defendant, however, has produced a consent agreement to arbitrate for Plaintiff Payne only. Therefore, Payne's consent agreement cannot govern what should happen to the remaining Named Plaintiffs or opt-in Plaintiffs as Defendant has not produced any

---

[2]Plaintiff Payne asks the Court to stay her claim rather than dismiss it. Plaintiff avers that it would be preferable for the Court to retain jurisdiction over her claim in the event of any settlement, which would need to be approved by the Court. The Court finds it has discretion to either stay or dismiss claims pending in arbitration. Here, given that to this point, Plaintiff Payne is the only Plaintiff who has consented to arbitration and the remaining claims will be moving forward, the Court finds it would be most efficient to dismiss Plaintiff Payne's claims to arbitration. The other cases will then proceed on a judicial track while Plaintiff Payne's claim goes through arbitration.

5

consent agreements for those individuals.[3]   The Court proceeds to discuss the parties' arguments related to whether any other Named Plaintiff or opt-in Plaintiff is bound by the Arbitration Policy as alleged by Defendant.

Under the Federal Arbitration Act, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367-68 (11th Cir. 2005) (noting that no signature is required on written agreement).   In determining whether to compel arbitration, the court must consider whether the parties have agreed to arbitrate their dispute. The "question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); Martinez v. Carnival Corp., 744 F.3d 1240, 1246 (11th Cir. 2014).

"Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause." Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1114 (11th Cir.

---

[3]The Court recognizes the possibility that future opt-in Plaintiffs may have signed consent agreements in the same manner as Plaintiff Payne. The Court will address those situations as they arise.

2001). The Federal Arbitration Act "creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement." See Ivax Corp. v. B. Braun of America, Inc., 286 F.3d 1309, 1320 (11th Cir. 2002).

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." Employers Insurance of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001); see also Caley, 428 F.3d at 1367-68, 1372 (no heightened knowing and voluntary standard). "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: A party cannot be required to submit to arbitration any dispute which he has not agreed to submit." Telecom Italia, 248 F.3d at 1114 (quotations and citations omitted); see also Dasher v. RBC Bank (USA), 745 F.3d 1111, 1116 (11th Cir. 2014).

A party seeking to avoid arbitration must "unequivocally deny" she agreed to arbitrate and must "offer some evidence to substantiate the denial." Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x 782, 785 (11th Cir. 2008) (citing Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 855 (11th Cir. 1992)). Once the agreement is put "in issue," the Federal Arbitration Act requires the court to either proceed to trial or if a jury trial has not been requested to hear and

determine the issue.  Id.  "Only where there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."  Id. at 785-86 (quotations and citations omitted) (applying summary-judgment like standard and noting also that court should give party denying agreement "benefit of all reasonable doubts and inferences").  "While doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." Dasher, 745 F.3d at 1116.

The parties agree that Georgia law applies to the Arbitration Policy because all relevant events occurred there. See, e.g., General Elec. Credit Corp. v. Home Indem. Co., 168 Ga. App. 344, 349, 309 S.E.2d 152, 157 (1983).  Under Georgia law, a binding contract requires (1) a definite offer, (2) complete acceptance, and (3) consideration. Moreno v. Strickland, 255 Ga. App. 850, 852, 567 S.E.2d 90, 92 (2002). The "circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider extrinsic evidence." Frickey v. Jones, 280 Ga. 573, 575, 630 S.E.2d 374, 376 (2006) (quotations and citations omitted).

Here, the only basis Defendant proffers for Plaintiffs being aware of the Arbitration Policy is its supposed presence on the bulletin board in the employee's dressing room.  Plaintiffs have submitted the affidavits of three employees stating they never saw the Arbitration Policy on the bulletin board in the employee's dressing room.  Thus, under <u>Chastain</u>, the Court finds that Plaintiffs have denied the existence of an agreement to arbitrate and have made their denial colorable by virtue of their affidavits.[4]

However, even assuming that the Arbitration Policy was posted on the bulletin board as contended by Defendant, Defendant has not proffered any evidence to show that an employee would understand the posting as notice of an offer to arbitrate employment disputes.  Under Georgia law, an "offer" is the "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." <u>Caley</u>, 428 F.3d at 1373 (<u>citing</u> Restatement (Second) Contracts, § 24) (applying Georgia law).  The only manner in which the Arbitration Policy was "offered" to Plaintiffs was via its posting on the dressing room bulletin board.  Defendant, however, has not cited any case in which posting of an arbitration agreement on a workplace bulletin board constituted sufficient notice to an employee such that he

---

[4]Plaintiffs do not dispute that the terms of the Arbitration Policy itself would apply to their FLSA claims.

9

would understand his assent to the bargain was requested.  In other words, Defendant has proffered no evidence to show that the "offer" of arbitration was actually or sufficiently communicated to the employees.

For example, in Caley, the employer mailed a copy of a new dispute resolution program to all employees with an explanatory cover letter and a question-and-answer form. The documents were also placed on the company's website and distributed through an electronic newsletter.  Notices about the policy were placed on thirteen bulletin boards.  See 428 F.3d at 1364 (distinguishing Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546 (1st Cir. 2005), by noting that in Campbell, email message to employees did not notify them that policy was contract that would be accepted by continued employment, that material was available only in separate brochure accessed through a link attached to email message); see also Abdullah v. American Exp. Co., Civil Action No. 3:12-CV-1037, 2012 WL 6867675 (M.D. Fla. Dec. 19, 2012) (company sent email to employees, packet to home addresses, provided notices in paychecks, and final letter to employees confirming participation in arbitration policy); McBride v. GameStop, Inc., Civil Action No. 1:10-CV-2376-RWS (N.D. Ga. Feb. 8, 2011) (employees signed "acknowledgment form" stating they received policy and brochure summarizing policy, supervisors spoke to employees about policy, flowchart describing policy

10

was posted on wall of store, policy available through in-store procedure manual and on company's intranet site).

Defendant's Arbitration Policy was not contained in any employee handbook. It was not mailed to the employee's home address. It was not emailed to the employee such that the employer could confirm the email was viewed. There was no acknowledgment form which the employee had to sign. There was no evidence that any supervisor discussed the Arbitration Policy with employees. There is no evidence that employees were told an Arbitration Policy was posted on the dressing room bulletin board. In fact, there was no mechanism at all for the employer to determine whether an individual employee saw the Policy.

As Defendant proffers in the several affidavits of Steven Shine, the document is multiple pages. The operative paragraph does not appear until the final page. There is nothing in the posting of the document on the bulletin board to signal to an employee that the information contained therein is important enough to warrant her attention or response. These facts make this case distinguishable from those cited by Defendant in which continued performance constituted acceptance of an arbitration agreement. See Doc. No. [22], pp. 5-6. Mere availability of the Policy is not sufficient to have put Plaintiffs on notice that the document contained important information that the employee should review. See Moran v. Ceiling Fans

11

Direct, Inc., Civil Action No. H-06-813, 2006 WL 2478837 (S.D. Tex. Aug. 25, 2006), aff'd, 239 F. App'x 931 (5th Cir. 2007) (court refused to enforce arbitration agreement where employer placed copies of policy on table in employee break room and requested employees take one, but did not provide any means of verifying employee did so, and supervisor's comments about policy contradicted its written terms; court rejected employer's argument that employees' return to work following placement of policy signaled employees' agreement to be bound by arbitration policy).

The Court finds as a matter of law that there is not sufficient evidence in the record to demonstrate that any employee was aware of the posting of the Arbitration Policy, such that the posting could constitute an "offer" of arbitration. The Court's inquiry ends there. Defendant argues that Plaintiffs' continued employment constitutes their acceptance of the policy.[5] But that presumes the fact that there was an "offer" or that Plaintiffs were aware of the Arbitration Policy at all. See, e.g., Caley, 428 F.3d at 1374 ("Georgia courts have held that an employee can accept new terms of employment **of which the employee is aware** by remaining in employment.") (emphasis added) (citing Fletcher v. Amax, Inc., 160

---

[5]The Court recognizes that under certain circumstances, continued employment can constitute acceptance. See, e.g., Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367-68 (11th Cir. 2005).

Ga. App. 692, 694-95, 288 S.E.2d 49, 51 (1981)).  Because there is no evidence in the record that Defendant made any effort to communicate the Arbitration Policy to Plaintiffs, their continued employment cannot constitute acceptance of that Policy.

If the Court found there were a dispute of fact as to the whether the parties agreed to arbitrate, the Court would normally find a trial necessary under 9 U.S.C. § 4.  Here, the parties do dispute whether the Arbitration Policy was posted on the bulletin board.  However, even presuming that it was posted, the mere posting is not sufficient as a matter of Georgia contract law to have put Plaintiffs on notice that they had received an offer from their employer of mandatory arbitration and that their continued employment would constitute their assent to that offer.

For these reasons, the court DENIES Defendant's second motion to compel arbitration [19].

### III.    Conclusion

The Court DENIES AS MOOT Defendant's motion to compel arbitration [10]; DENIES Defendant's second motion to compel arbitration [19]; and DENIES Defendant's motion to strike Plaintiffs' supplemental declarations [36].

AO 72A
(Rev.8/82)

The Clerk of the Court is DIRECTED to DISMISS Plaintiff Payne from the litigation.

**IT IS SO ORDERED** this 10th day of September 2015.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

14

AO 72A
(Rev.8/82)